FILED

201 JAN - 7 AM II: 12

CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO
TOLEDO

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO, WESTERN DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION ) | MAG. JUDGE ARMSTRONG |
| ) | |
| and ) | |
| ) | |
| STATE OF OHIO ) | 3:11 C V 0 0 4 7 |
| ) | |
| Plaintiffs, ) | No. _____-cv-_____ |
| v. ) | |
| ) | **FILED UNDER SEAL** |
| PROMEDICA HEALTH SYSTEM, INC. ) | |
| ) | |
| Defendant. ) | JUDGE JAMES G. CARR |

## COMPLAINT FOR TEMPORARY RESTRAINING ORDER
## AND PRELIMINARY INJUNCTION

Plaintiffs, the Federal Trade Commission ("FTC" or "Commission") and the State of

Ohio, by their designated attorneys, petition the Court, pursuant to Section 13(b) of the Federal

Trade Commission Act ("FTC Act"), 15 U.S.C. § 53(b), and Section 16 of the Clayton Act, 15

U.S.C. § 26, for a temporary restraining order and preliminary injunction enjoining Defendant

ProMedica Health System, Inc. ("ProMedica"), including its domestic and foreign agents,

divisions, parents, subsidiaries, affiliates, partnerships, or joint ventures, from further

1

ORIGINAL

consolidating its operations with those of its recently-acquired competitor, St. Luke's Hospital ("SLH" or "St. Luke's"). ProMedica acquired St. Luke's pursuant to a joinder agreement consummated on August 31, 2010. Plaintiffs require the aid of this Court to maintain the *status quo* during the administrative proceeding, including a trial on the merits scheduled for May 31, 2011, that the Commission initiated pursuant to Section 7 of the Clayton Act, 15 U.S.C. § 18, and the Commission's Rules of Practice. The on-going administrative proceeding will determine the legality of the acquisition, subject to judicial review by a federal Court of Appeals, and will provide a forum for all parties to conduct full discovery and present evidence regarding the likely effects of the acquisition.

## I.

## NATURE OF THE CASE

1.      ProMedica's acquisition of St. Luke's (the "Acquisition") threatens to substantially lessen competition for critical healthcare services in Lucas County, Ohio. This diminished competition will stifle beneficial quality improvements and will result in significant increases in healthcare costs to local residents, many of whom are already struggling to keep up with rising medical expenses. The parties' own documents acknowledge the Acquisition's *"great[] potential for higher hospital rates"* and that it *"may not be the best thing for the community in the long run"* (emphasis added). Without temporary and preliminary injunctive relief from this Court, ProMedica may fully integrate its operations with those of St. Luke's – including the elimination of staff, termination or relocation of services, and implementation of higher rates for its general acute-care inpatient hospital and obstetrical services – and irreversibly undermine the Commission's ability to order effective relief if the transaction is

2

deemed unlawful following the trial on the merits.

2.      Defendant ProMedica effectively acquired and took control of its nearby competitor St. Luke's upon consummation of the parties' joinder agreement on August 31, 2010. In order to avoid potential legal action by the Commission at that time, however, Defendant agreed with Commission staff to a limited "hold-separate agreement" that temporarily maintains the competitive viability of St. Luke's and prevents, among other things, Defendant from renegotiating health-plan contracts or raising the rates it charges to health-plan customers and members, namely the local employers and employees in Lucas County. Unless the hold-separate agreement is extended by this Court, these critical protections will expire in a matter of days.

3.      Ordinary course documents reveal that a principal motivation for the Acquisition was to gain enhanced bargaining leverage with health plans and the ability to raise prices for services. Indeed, SLH's internal strategic plans unambiguously reveal that the Acquisition could allow ProMedica to *"stick it to employers, that is, to continue forcing high rates on employers and insurance companies"* (emphasis added). Elsewhere, SLH's documents observe that an "affiliation with ProMedica ha[d] the *greatest potential for higher hospital rates*" and could *"increase prices/costs to the community"* (emphasis added). Rate increases would generate higher profits for the Defendant, but – as SLH's internal business plans acknowledge – would impose significant burdens on local employers and employees, either directly or through higher health insurance premiums, co-pays, and other out-of-pocket healthcare expenses. These cost increases have real health-related consequences, as they inevitably force some employers to reduce or eliminate health-insurance coverage for their employees, force some families to drop their health insurance altogether, and cause others to delay or forgo checkups and other medical

3

care that they can no longer afford.

4.     The Acquisition reduces the number of competitors in Lucas County for general acute-care inpatient hospital services from four to three and, for inpatient obstetrical services, from three to two. After the Acquisition, ProMedica – already self-acclaimed as the dominant provider of healthcare services in greater Toledo – has just two competitors in Lucas County for general acute-care hospital services: Mercy Health Partners ("Mercy") and University of Toledo Medical Center ("UTMC"). Because UTMC does not offer obstetrical services, there is even less competition for those services; the Acquisition has resulted in a duopoly, with ProMedica facing only Mercy as a competitor.

5.     Post-Acquisition, ProMedica now controls nearly 60% of the general acute-care inpatient hospital services market in Lucas County and over 80% of the market for obstetrical services, as measured by patient days. These extraordinarily high market shares and concentration levels render the Acquisition presumptively unlawful *in both relevant markets* – general acute-care services and obstetrics – under the relevant case law and the U.S. Department of Justice and Federal Trade Commission Horizontal Merger Guidelines ("Merger Guidelines"). This strong presumption of illegality is independently confirmed and supported by an array of qualitative and quantitative evidence from sources including health plans, local employers, third-party hospitals, and the merged parties themselves.

6.     The price and non-price competition eliminated by the Acquisition will not be replaced by other hospitals in the next several years, if ever. Significant barriers to entry and expansion, including regulatory requirements and funding needs, prevent new hospitals from entering the market and prevent existing hospitals from substantially expanding existing

4

services. The cost of opening a new obstetrics department in an existing hospital is also prohibitive. Finally, the Defendant's purported efficiencies are insufficient to offset the significant anticompetitive harm likely to result from the Acquisition.

7. Temporary and preliminary injunctive relief therefore is imperative to preserve the *status quo* and protect competition during the Commission's on-going administrative proceeding. This temporary relief is warranted as long as the FTC raises "questions going to the merits so serious, substantial, difficult and doubtful as to make them fair ground for thorough investigation, study, deliberation and determination by the [FTC] in the first instance, and ultimately by the Court of Appeals." Thus, the Court in this matter "is not called upon to reach a final determination on the antitrust issues." Instead, the "one purpose of a proceeding under Section 13(b) is to preserve the *status quo* until the FTC can perform its function." Failure to preserve the *status quo* would permit ProMedica to proceed with full integration and allow it to relocate or eliminate services and renegotiate health-plan contracts, resulting in immediate and significant harm to local residents, as well as undermining the Commission's ability to remedy the anticompetitive effects of the Acquisition, if it is determined unlawful after the trial on the merits scheduled for May 31, 2011, and appeal to the Commission.

## II.

## BACKGROUND

### A.

### Jurisdiction and Venue

8. This Court's jurisdiction arises under Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), and Section 16 of the Clayton Act, 15 U.S.C. § 26, and upon 28 U.S.C. §§ 1331, 1337, and 1345. This is a civil action arising under Acts of Congress protecting trade and commerce

against restraints and monopolies, and is brought by an agency of the United States authorized by an Act of Congress to bring this action. ProMedica, and its relevant operating subsidiaries, is, and at all relevant times has been, engaged in activities in or affecting "commerce" as defined in Section 4 of the FTC Act, 15 U.S.C. § 44, and Section 1 of the Clayton Act, 15 U.S.C. § 12.

9.  ProMedica transacts business in the Northern District of Ohio and is subject to personal jurisdiction therein. Venue therefore is proper in this district under 28 U.S.C. § 1391 (b) and (c) and 15 U.S.C. § 53(b).

10.  Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), provides in pertinent part:

(b)  Whenever the Commission has reason to believe –

> (1) that any person, partnership, or corporation is violating, or is about to violate, any provision of law enforced by the Federal Trade Commission, and
>
> (2) that the enjoining thereof pending the issuance of a complaint by the Commission and until such complaint is dismissed by the Commission or set aside by the court on review, or until the order of the Commission made thereon has become final, would be in the interest of the public – the Commission by any of its attorneys designated by it for such purpose may bring suit in a district court of the United States to enjoin any such act or practice. Upon a proper showing that weighing the equities and considering the Commission's likelihood of ultimate success, such action would be in the public interest, and after notice to the defendant, a temporary restraining order or a preliminary injunction may be granted without bond . . .

## B.

### The Parties

11.  The Commission is an administrative agency of the U.S. Government established, organized, and existing pursuant to the FTC Act, 15 U.S.C. § 41 *et seq.*, with its principal offices at 600 Pennsylvania Avenue, N.W., Washington, D.C. 20580. The Commission is vested with

authority and responsibility for enforcing, *inter alia*, Section 7 of the Clayton Act, 15 U.S.C. § 18.

12.     The State of Ohio is a sovereign state of the United States. This action is brought by and through its Attorney General, who is the chief law enforcement officer of the State, with the authority to bring this action on behalf of his state pursuant to Section 16 of the Clayton Act, 15 U.S.C. § 26. The Office of the Attorney General of Ohio has its principal offices at 30 East Broad Street, Columbus, Ohio 43215.

13.     Defendant ProMedica is a not-for-profit healthcare system incorporated under and by virtue of the laws of Ohio. ProMedica is headquartered at 1801 Richard Road, Toledo, Ohio, 43607. ProMedica's healthcare system serves northwestern and west-central Ohio and southeastern Michigan. Excluding St. Luke's, ProMedica operates three general acute-care hospitals in Lucas County, Ohio: The Toledo Hospital ("TTH"); Flower Hospital ("Flower"); and Bay Park Community Hospital ("Bay Park"). ProMedica also owns Paramount Health Care ("Paramount"), a for-profit corporation that operates one of the largest commercial health plans in Lucas County, and Toledo Children's Hospital. ProMedica is by far the largest employer of physicians in Lucas County. In 2009, ProMedica's revenues totaled approximately $1.6 billion. As of August 31, 2010, ProMedica effectively acquired and took control of St. Luke's, a formerly independent, not-for-profit acute-care community hospital located at 5901 Monclova Road, Maumee, Ohio, 43537. St. Luke's was broadly recognized as a high-quality, low-cost hospital, which generated revenues of approximately $156 million in 2009.

## C.

### The Acquisition and the Commission's Response

14.     By virtue of the joinder agreement consummated on August 31, 2010, ProMedica

currently is the sole corporate member of St. Luke's and its affiliated entities, with control and ultimate authority over all significant business decisions at St. Luke's. ProMedica also acquired ownership, including all stock interest, in certain SLH for-profit entities. Thus, ProMedica now controls SLH's strategic planning, operating and capital budgets, large unbudgeted expenditures, and significant borrowing and contracting. Importantly, ProMedica also will negotiate SLH's contracts with commercial health plans.

15.    Pending an expedited investigation by the Commission, ProMedica entered into a limited hold-separate agreement by which it agreed to refrain from fully integrating St. Luke's with its own hospitals and operations for 60 days following the consummation of the Acquisition. The agreement includes a commitment to preserve SLH's competitive viability, to refrain from eliminating any of SLH's clinical service lines, and to maintain SLH's current contractual arrangements with health plans.

16.    Following the Commission's petition for enforcement of its investigative subpoenas and civil investigative demands ("CIDs") in this Court, the hold-separate agreement was modified to expire 15 days after Defendant substantially complied with the subpoenas and CIDs. Defendant certified substantial compliance on January 3, 2011. The hold-separate protections therefore will expire in a matter of days, absent relief by this Court.

17.    On January 6, 2011, by a unanimous vote, the Commission found reason to believe that the Acquisition would violate Section 7 of the Clayton Act by substantially reducing competition in two lines of commerce, and initiated an administrative proceeding. A plenary administrative trial on the merits of the Acquisition will begin on May 31, 2011. After an initial decision by an FTC ALJ, the Commission will determine the legality of the Acquisition under Section 7 of the Clayton Act, and an appropriate remedy if it finds liability. Under Section 11(c)

8

of the Clayton Act, 15 U.S.C. § 21(c), ProMedica may appeal an adverse Commission decision

directly to any U.S. Court of Appeals within whose jurisdiction ProMedica resides or conducts

business.

18.     Also on January 6, 2011, the Commission authorized staff to commence this

federal court proceeding under Section 13(b) of the FTC Act. This action seeks to enjoin further

integration of St. Luke's into Defendant's operations pending resolution of the Commission's

administrative proceeding, and any appeals, to minimize interim harm to competition and

preserve the Commission's ability to grant an adequate remedy if it concludes that the

Acquisition is unlawful.

### III.

### THE RELEVANT SERVICE MARKETS

#### A.

#### General Acute-Care Inpatient Services Market

19.     The Acquisition threatens substantial harm to competition in two relevant service

markets. The first is general acute-care inpatient hospital services sold to commercial health

plans, which encompasses a broad cluster of basic medical and surgical diagnostic and treatment

services that include an overnight hospital stay, such as emergency services, internal medicine,

and minor surgeries. It is appropriate to evaluate the Acquisition's likely effects across this

entire cluster of services, rather than analyzing each service independently, because the group of

services is offered by the same competitors under similar competitive conditions.

20.     The general acute-care inpatient services market excludes outpatient services

because health plans and patients could not substitute outpatient services for inpatient care in

response to a price increase. Similarly, more sophisticated and specialized tertiary and quaternary

services, such as major surgeries and organ transplants, also are properly excluded from the relevant market because they are not substitutes for general acute-care inpatient services.

## B.

## Inpatient Obstetrical Services

21.     The Acquisition also threatens substantial competitive harm in the market for inpatient obstetrical services. This market encompasses hospital services provided for labor and delivery of newborns. No other hospital services are reasonably interchangeable with inpatient obstetrical services, making this an appropriate relevant market within which to analyze the likely effects of the Acquisition.

22.     Within the broader relevant market for general acute-care services, it is appropriate to define a narrower relevant service where it more fully accounts for unique competitive conditions. Here, these unique competitive conditions include that there are fewer hospitals offering inpatient obstetrical services in Lucas County: neither UTMC, one of the two remaining competitors in the market for general acute-care inpatient services, nor Mercy's St. Anne Hospital provide obstetrical services.

## IV.

## THE RELEVANT GEOGRAPHIC MARKET

23.     The relevant geographic market in which to analyze the effects of the Acquisition for each relevant service market is Lucas County, Ohio.

24.     The appropriate geographic market is determined by examining the geographic boundaries within which a hypothetical monopolist for the services at issue could profitably raise prices by a small but significant amount.

25.     Due to residents' clear preference for local hospital care, health plans must have a

10

strong representation of Lucas County hospitals in their provider networks in order to satisfy employers and their employees.  Health plans could not steer members to hospitals outside of Lucas County in response to rate increases at the Lucas County hospitals.  Thus, a hypothetical monopolist that controlled *all* of the hospitals, or all obstetrical services, in Lucas County could profitably increase rates by at least a small but significant amount.  Hospitals outside of Lucas County do not meaningfully compete with Lucas County hospitals.

26.  According to the merged hospitals' own ordinary-course documents, ProMedica and St. Luke's do not regard non-Lucas County hospitals as significant competitors.  Instead, ProMedica and St. Luke's have focused their competitive efforts on – and have repeatedly computed market shares based on – hospitals in and around Toledo.  Patient discharge data demonstrates that less than three percent of Lucas County residents leave the county for general acute-care or obstetrical services.

## V.

## MARKET STRUCTURE AND THE ACQUISITION'S PRESUMPTIVE ILLEGALITY

27.  The Acquisition reduces the number of general acute-care competitors in Lucas County from four to three, leaving ProMedica facing only two competitors, Mercy and UTMC.  Because UTMC does not provide obstetrical services, the Acquisition reduces the competitors for obstetrical services from three to two, resulting in a duopoly of ProMedica and Mercy.

28.  Under relevant case law and the Merger Guidelines, the Acquisition is presumptively unlawful in both relevant service markets.  ProMedica's post-Acquisition market share in the general acute-care inpatient services market approaches 60%, as measured by patient days.  In the market for inpatient obstetrical services, the post-Acquisition market share exceeds 80%.  These extraordinarily high market shares easily surpass levels that have been found

11

presumptively unlawful by the Supreme Court.

29.    The Merger Guidelines measure market concentration using the Herfindahl-Hirschman Index ("HHI"). Under that test, a merger or acquisition is presumed likely to create or enhance market power (and presumed illegal) when the post-merger HHI exceeds 2500 points and the merger or acquisition increases the HHI by more than 200 points. The market concentration levels here exceed these thresholds by a wide margin. The post-Acquisition HHI in the general acute-care inpatient services market will increase by 1078 points to 4391. HHI levels are even higher in the obstetrical services market, with a post-Acquisition HHI of 6854 and an Acquisition-related increase of 1323. The HHI figures for each relevant service market are summarized in the following tables.

| GENERAL ACUTE-CARE INPATIENT SERVICES | | |
|---|---|---|
| **Hospital/System** | **Pre-Acquisition Market Share** | **Post-Acquisition Market Share** |
| ProMedica | 46.8% | 58.3% |
| Mercy | 28.7% | 28.7% |
| St. Luke's | 11.5% | -- |
| UTMC | 13.0% | 13.0% |
| **Pre-Acquisition HHI** | | 3312.5 |
| **Post-Acquisition HHI** | | 4390.7 |
| **HHI Increase** | | 1078.2 |

| OBSTETRICAL SERVICES | | |
|---|---|---|
| **Hospital/System** | **Pre-Acquisition Market Share** | **Post-Acquisition Market Share** |
| ProMedica | 71.2% | 80.5% |
| Mercy | 19.5% | 19.5% |
| St. Luke's | 9.3% | -- |
| **Pre-Acquisition HHI** | | 5531.2 |
| **Post-Acquisition HHI** | | 6853.7 |
| **HHI Increase** | | 1322.5 |

## VI.

## ANTICOMPETITIVE EFFECTS

### A.

### Increased Bargaining Leverage for ProMedica

30.     By eliminating significant, beneficial competition between Defendant ProMedica and St. Luke's, the Acquisition vests ProMedica with an increased ability and incentive to demand supra-competitive reimbursement rates from commercial health plans and their membership.

31.     Before the Acquisition, ProMedica and St. Luke's were close competitors in the markets for general acute-care inpatient services and inpatient obstetrical services, in terms of geographic proximity and similarity of service offerings.  Indeed, SLH's CEO testified that ProMedica had been SLH's "most significant competitor" for inpatient hospital services and obstetrical services in its main service area.  For its part, ProMedica was so focused on St. Luke's as a key competitor before the Acquisition that it pressured health plans to exclude St. Luke's

from their preferred provider networks, even penalizing a health plan that reached agreement with

St. Luke's by charging it higher rates for ProMedica's services. ProMedica's documents also

expressly acknowledge that it was losing market share to St. Luke's throughout 2009 and that the

Acquisition was intended to "recapture" those losses.

32.      Prior to the Acquisition, St. Luke's had significantly less bargaining leverage than

ProMedica, the dominant provider system in Lucas County. As a result, St. Luke's negotiated

substantially lower rates with health plans than ProMedica did. ProMedica and St. Luke's will

now be able to use their enhanced "negotiating clout" to raise SLH's rates to levels at least equal

to the other ProMedica hospitals in Lucas County. Indeed, SLH's motivation for entering into the

Acquisition was "access to [ProMedica's] outstanding pricing on managed care agreements." An

increase in St. Luke's rates merely to the levels of the other ProMedica hospitals could force

employers and employees to pay from 25% to over 100% more for inpatient services obtained

there.

33.      With the addition of St. Luke's to its hospital system, ProMedica has become a

"must-have" system for health plans seeking to do business in Lucas County, because health

plans are no longer able to offer a commercially viable provider network without including

ProMedica's hospitals. Health plans no longer have the ability to drop ProMedica from their

networks, or even credibly threaten to do so, as before. In fact, in at least the past decade, no

health plan has offered a network in Lucas County consisting of only the Mercy hospitals and

UTMC, as they would have to do without agreeing to ProMedica's rates today. Thus, health

plans in the area now must either reach agreement with ProMedica, likely at substantially higher

rates, offer a commercially unattractive hospital network to their members, or even be forced to

exit the Lucas County market altogether.

14

34.     This significant change in the negotiating dynamic gives ProMedica much-enhanced bargaining clout in contract negotiations and the ability to extract higher rates for inpatient services at St. Luke's *and* at its other Lucas County hospitals. ProMedica is widely recognized by health plans as having the highest rates in Lucas County and for making aggressive rate increase demands, relative to other hospitals, and particularly St. Luke's. In fact, ProMedica's CEO acknowledged to other senior executives in 2010 that health plans viewed ProMedica as "the most expensive in Ohio" despite having "subpar quality." Health plans predict that price increases could readily exceed 20%. Indeed, this ability to demand higher rates was a principal motivation behind the Acquisition.

35.     ProMedica's ownership of the for-profit commercial health plan Paramount may further increase its ability and incentive to increase rates. If other health plans must pay higher rates to access ProMedica's hospitals or, worse yet, must exit Lucas County altogether, ProMedica would benefit because Paramount would capture some of the business of its disadvantaged, or departed, health-plan competitors. As a result, ProMedica's ownership of Paramount may render a post-Acquisition price increase even more profitable – and therefore more likely.

36.     Price increases resulting from the Acquisition will be passed on to local employers and their employees. In Lucas County, nearly 70% of commercial health-plan membership is self-insured. Self-insured employers rely on health plans only to negotiate rates and provide administrative support; the employers themselves pay the full cost of their employees' healthcare claims. As a result, self-insured employers immediately and directly bear the full burden of higher rates. Fully-insured employers also are inevitably harmed by higher rates, because health plans pass on at least a portion of hospital rate increases to these customers.

15

37.     Employers, in turn, must pass on their increased healthcare costs to their employees, in whole or in part. Employees will bear these costs in the form of higher premiums, higher co-pays, reduced coverage, or restricted services. Some Lucas County residents will forgo or delay necessary healthcare services because of the higher costs.

## B.

## The Loss of Quality Competition

38.     The Acquisition also will reduce the quality and breadth of services available in Lucas County.

39.     Competition between ProMedica and St. Luke's has spurred both parties to increase quality of care, offer additional services, and has fostered other, non-financial benefits for the residents of Lucas County. These important elements of competition will be lost after the Acquisition.

40.     Before the transaction, St. Luke's offered the highest quality healthcare service in Lucas County, and did so at the lowest cost. St. Luke's is consistently recognized by third-party quality-rating organizations as being in the top 10% of hospitals nationally, based on outcomes, cost, and patient satisfaction. The Acquisition of St. Luke's by ProMedica – a higher-cost, lower-quality competitor – will diminish the quality of care at St. Luke's. Indeed, SLH's CEO and Board expressed this exact concern while considering the Acquisition.

## VII.

## ENTRY BARRIERS

41.     Neither hospital entry nor expansion by the two remaining hospitals will deter or counteract the Acquisition's likely harm to competition in the relevant service markets.

16

42.     New hospital entry or significant expansion in Lucas County would not be timely. Construction of a new general acute-care hospital would take more than two years from the initial planning stages to opening doors to patients. Significant expansion of services such as obstetrics takes years as well, and requires time-consuming recruitment of additional professional staff.

43.     Entry and expansion also are unlikely due to very high construction costs, operating costs, and financial risk, along with significant hospital-bed overcapacity in the Toledo area. Constructing a new obstetrics department in an existing hospital would cost well over $1 million, with operating costs of tens of millions of dollars a year. Notably, neither Mercy nor UTMC has current plans for entry or expansion in either relevant market – even if prevailing rates for general acute-care and obstetrical services increase significantly – and SLH's strategic documents confirm that "[s]ystems, outside of Toledo, have shown a reluctance of [sic] entering our market."

## VIII.

## EFFICIENCIES

44.     Extraordinary merger-specific efficiencies are necessary to justify the Acquisition in light of its vast potential to harm competition. Such efficiencies are lacking here.

45.     Defendant's efficiency claims – described by one ProMedica executive as deriving from a mere "gut feeling" – are too speculative to be cognizable. Moreover, the fact that SLH is the lowest cost hospital in the area and, by all accounts, a "lean" operation, suggests any claimed operational cost savings should be viewed with skepticism. Even if the claimed efficiencies were substantiated and achievable, they are not merger-specific, as St. Luke's could have affiliated with suitable and interested alternative partners – such as UTMC – far less restrictive of competition.

## IX.

## LIKELIHOOD OF SUCCESS ON THE MERITS AND NEED FOR RELIEF

46.     In deciding whether to grant relief, the Court must balance the likelihood of the Commission's ultimate success on the merits against the public equities, using a sliding scale. The principal equity in cases brought under Section 13(b) is the public's interest in effective enforcement of the antitrust laws. Equities affecting only the Defendant cannot tip the scale.

47.     The Commission's complaint raises questions going to the merits so serious, substantial, difficult and doubtful as to make them fair ground for thorough investigation, study, deliberation and determination by the FTC in the first instance, and ultimately by the Court of Appeals.

48.     The Commission has reason to believe that the Acquisition would violate Section 7 of the Clayton Act. In particular, Commission staff is likely to succeed in demonstrating, among other things, that:

a.     The Acquisition would have anticompetitive effects in the general acute-care inpatient services and inpatient obstetrical services markets in Lucas County, Ohio;

b.     Substantial and effective entry or expansion into these markets is difficult, and would not be likely, timely, or sufficient to offset the anticompetitive effects of the Acquisition; and

c.     Any efficiencies that Defendant may assert will result from the Acquisition

18

are speculative, not merger-specific, and are, in any event, insufficient as a matter of law to justify the Acquisition.

49.     Should the Commission rule, after the full administrative trial, that the Acquisition is unlawful, reestablishing the *status quo ante* of competition would be difficult, if not impossible, in the absence of preliminary injunctive relief. The integration of St. Luke's operations with ProMedica, including staff reductions, the elimination or transfer of service lines, and the implementation of higher contractual rates, would significantly impair any attempt to restore St. Luke's to its former role as an independent and viable competitor. Moreover, in the absence of relief from this Court, substantial harm to competition would occur in the interim, even if suitable divestiture remedies ultimately could be devised.

50.     Accordingly, the equitable relief requested here is in the public interest. WHEREFORE, plaintiffs respectfully request that the Court:

  a.    Temporarily restrain and preliminarily enjoin ProMedica from taking any further steps to integrate, consolidate, or combine its operations with those of St. Luke's, consistent with Plaintiffs' proposed Order;

  b.    Retain jurisdiction and maintain the *status quo* until resolution of the administrative proceeding that the Commission has initiated; and

  c.    Award such other and further relief as the Court may determine is appropriate, just, and proper.

Dated: January 07, 2011

Respectfully submitted,

*Jennifer L. Pratt*

JENNIFER L. PRATT
Chief, Antitrust Section
BETH A. FINNERTY
Principal Attorney
EDWARD J. OLSZEWSKI
Assistant Attorney General
Office of the Ohio Attorney General
150 East Gay Street, Floor 23
Columbus, Ohio 43215
Telephone: (614) 466-4328
Facsimile: (866) 419-2745
Email:
jennifer.pratt@ohioattorneygeneral.gov

*Attorneys for Plaintiff State of Ohio*

MATTHEW J. REILLY
JEFFREY H. PERRY
SARA Y. RAZI
JANELLE L. FILSON
Attorneys
Federal Trade Commission
Bureau of Competition
600 Pennsylvania Ave., N.W.
Washington D.C. 20580
Telephone: (202) 326-2350
Facsimile (202) 326-2286
Email: mreilly@ftc.gov

RICHARD A. FEINSTEIN
Director
NORMAN A. ARMSTRONG, JR.
Deputy Director
Federal Trade Commission
Bureau of Competition

WILLARD K. TOM
General Counsel
Federal Trade Commission

*Attorneys for Plaintiff Federal Trade Commission*

20

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 7th day of January, 2011, I filed the foregoing with the clerk of

the court.

Gretchen C. Croniser
Gretchen Croniser
U.S. Attorney's Office, Toledo

I HEREBY CERTIFY that on the 7th day of January, 2011, I served the foregoing on the

following counsel via electronic mail:

David Marx, Jr.
McDermott Will & Emery
227 West Monroe Street
Chicago, IL 60606-5096
Email: dmarx@mwe.com
Phone: (312) 984-7668

*Counsel for ProMedica Health System, Inc.*

Matthew J. Reilly
Attorney for Plaintiff Federal Trade Commission