# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO, WESTERN DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION ) | |
| ) | |
| and ) | |
| ) | |
| STATE OF OHIO ) | |
| ) | |
| Plaintiffs, ) | |
| v. ) | No. 3:11-cv-47 (DAK) |
| ) | Hon. David A. Katz |
| PROMEDICA HEALTH SYSTEM, INC. ) | |
| ) | |
| Defendant. ) | |

**REPLY TO DEFENDANT PROMEDICA HEALTH SYSTEM, INC.'S
OPPOSITION TO PLAINTIFF'S MOTION FOR
<u>MODIFICATION OF PRELIMINARY INJUNCTION ORDER</u>**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES………………………………………………………………...ii

INTRODUCTION…………………………………………………………………………...1

ARGUMENT………………………………………………………………………………...1

I. THE COURT HAS AUTHORITY TO MODIFY ITS PRELIMINARY-INJUNCTION ORDER DUE TO CHANGES IN LAW OR FACT; PROOF OF AN ORDER VIOLATION IS NOT REQUIRED………………………………………………………………………1

II. THE ALJ'S DIVESTITURE ORDER CONSTITUTES A MATERIAL CHANGE IN FACT AND GOOD CAUSE FOR AN ORDER MODIFICATION………………………………..4

**TABLE OF AUTHORITIES**

**CASES**

*A&M Records, Inc. v. Napster, Inc.*, 284 F.3d 1091 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . 2

*Canal Auth. of the State of Fla. v. Fullerton*, 489 F.2d 567 (5th Cir. 1974) . . . . . . . . . . . . . . . . . .2

*In re Chi. Bridge & Iron Co.*, 138 F.T.C. 1024; 2005 FTC LEXIS 215 (Jan. 6, 2005) . . . . . . .1, 5

*Movie Sys., Inc. v. MAD Minneapolis Audio Distrib.*, 717 F.2d 427 (8th Cir. 1983) . . . . . . . . .2, 5

*Omaha Indem. Co. v. Wining*, 949 F.2d 235 (8th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Sys. Fed'n No. 91, Ry. Employees' Dep't, AFL-CIO v. Wright*, 364 U.S. 642 (1961) . . . . . . . . . .2

**STATUTES**

Clayton Act § 7, 15 U.S.C. § 18 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3, 4

## INTRODUCTION

> *Experience has shown not only that a seller has the incentive to create a weak competitor with its divestiture package, but also that buyers may lack the necessary information to assess properly the asset package. A monitor trustee will ensure that a good mix of assets is made available to the acquirer and that the acquirer receives what it needs to maintain a viable business. A monitor trustee also will make certain that the divestiture proceeds smoothly by providing a conduit between the acquirer and Respondents and promptly notifying the Commission of any problems.*
> - *In re Chi. Bridge & Iron Co.*, 138 F.T.C. 1024, at \*1162; 2005 FTC LEXIS 215 (Jan. 6, 2005) (Comm'n Dec.)

The Chief Administrative Law Judge's Initial Decision and order, requiring ProMedica to divest St. Luke's, constitutes a material change in circumstances, the litigating posture of the parties, and the likelihood that ProMedica will ultimately have to divest St. Luke's. This Court is authorized to modify its preliminary-injunction order where there is such a change in facts, law, or any other good cause. The temporary appointment of a Hold-Separate Monitor is a reasonable and measured way to ensure compliance with this Court's order – for the first time since it was issued 10 months ago – and to ensure that a final decision by the Federal Trade Commission ("FTC" or "Commission") for ProMedica to divest St. Luke's would not be frustrated. Defendant ProMedica's arguments against the appointment of a Hold-Separate Monitor are unavailing.

## ARGUMENT

**I. THE COURT HAS AUTHORITY TO MODIFY ITS PRELIMINARY-INJUNCTION ORDER DUE TO CHANGES IN LAW OR FACT; PROOF OF AN ORDER VIOLATION IS NOT REQUIRED**

The Court is authorized to modify its preliminary-injunction order even without proof of an order violation. Defendant's Opposition Memorandum cites no case law to the contrary, and

1

it cites to none questioning the authority of this court to modify its own injunction. Indeed, the case law is clear that a change in law or fact or any other good reason, alone, is all that is required to justify an order modification. *Sys. Fed'n No. 91, Ry. Employees' Dep't, AFL-CIO v. Wright*, 364 U.S. 642, 647 (1961) ("A continuing decree of injunction directed to events to come is subject always to adaptation as events may shape the need. . . . There is also no dispute but that a sound judicial discretion may call for the modification of the terms of an injunction decree if the circumstances, whether of law or fact, obtaining at the time of its issuance have changed, or new ones have since arisen.") (internal citation omitted); *Movie Sys., Inc. v. MAD Minneapolis Audio Distrib.*, 717 F.2d 427, 430 (8th Cir. 1983) ("In modifying a preliminary injunction, a district court . . . is authorized to make *any changes* in the injunction that are equitable in light of subsequent changes in the facts or the law, *or for any other good reason*.") (emphasis added; citations omitted); *Canal Auth. of the State of Fla. v. Fullerton*, 489 F.2d 567, 578 (5th Cir. 1974) (same) (citing 7 MOORE'S FEDERAL PRACTICE ¶ 65.07 (2d ed. 1982)); *see also A&M Records, Inc. v. Napster, Inc*., 284 F.3d 1091, 1098 (9th Cir. 2002) ("A district court has inherent authority to modify a preliminary injunction in consideration of new facts"). An injunction can be modified, not only to relieve a party from the operation of the injunction, but to strengthen the injunction. *See Omaha Indem. Co. v. Wining*, 949 F.2d 235, 239 (8th Cir. 1991); *Movie Sys.*, 717 F.2d at 431.

Therefore, Defendant's primary argument – that there is no proof that ProMedica has violated this Court's order – is far from dispositive. Moreover, it would largely defeat the purpose of appointing a monitor if the Court waited to do so until there is proof that a violation has occurred. Rather, the very purpose of appointing a monitor is to *ensure compliance* and to

2

avoid violations in the first place, especially where the harm from a violation may be irreversible.

There are several flaws with Defendant's argument that the pre-complaint investigation and litigation discovery gave FTC staff an ability to monitor ProMedica's compliance with the Hold-Separate Agreement ("HSA"). Def.'s Opp. Br. at 3. First, the investigation, discovery, and trial were solely focused on whether ProMedica's acquisition of St. Luke's violated Section 7 of the Clayton Act – not whether ProMedica violated the HSA. Second, the voluminous investigative record and discovery and evidence Defendant points to includes evidence from witnesses, including third-party hospitals (e.g., Wood County Hospital), employers (e.g., Chrysler), and expert witnesses, who would have no evidence whatsoever relating to ProMedica's compliance with the HSA. Third, even assuming that such discovery could reveal HSA-relevant information, discovery in the administrative trial closed April 8, 2011,[1] so it has been nine months since FTC staff could have received any information about ProMedica's HSA compliance. Finally, that discovery did not reveal an HSA violation does not mean that a violation has not occurred. In sum, litigation discovery is not a substitute for HSA-compliance monitoring.

Defendant also points to purported benefits of the Acquisition,[2] and selectively quotes the ALJ's Initial Decision, to suggest that there is no ongoing risk of an HSA violation. This argument is meritless. Defendant failed to note that the ALJ, like this Court in the preliminary-injunction stage, rejected ProMedica's efficiency claims, stating: "[B]ased upon applicable legal principles, it cannot be concluded that the benefits and efficiencies generated from the Joinder

---

[1] ALJ's Scheduling Order (Feb. 7, 2011) (closing discovery, other than deposition of experts and discovery for purposes of authenticity and admissibility of exhibits), available at www.ftc.gov/os/adjpro/d9346/110207aljschedorder.pdf.

[2] These purported benefits are solely based on the biased, self-serving testimony of ProMedica's CFO.

3

represent 'significant economies' that ultimately would benefit competition and, hence, consumers, or that the benefits and efficiencies asserted are greater than the likely anticompetitive effects of the increase in market power produced by the Joinder[.]" Init. Dec. at 192. Moreover, the alleged benefits are wholly irrelevant to whether the divestiture order under the Initial Decision changes ProMedica's incentives to comply with the HSA, which is the basis for the FTC's instant motion. Third, the alleged benefits, even if arguably relevant to ProMedica's compliance with the HSA, are solely relevant to ProMedica's compliance with HSA ¶ 1 (requirement to maintain competitiveness and viability of St. Luke's and its assets) and are wholly irrelevant to – and therefore tell us nothing about – ProMedica's compliance with the remaining provisions of the HSA. In other words, even if the alleged benefits suggest compliance with one part of the HSA, that does not mean that there is no violation of another part of the HSA. In essence, Defendant asks this Court to reject Plaintiff's motion, relying solely on the representations of Defendant's executive rather than independently verify ProMedica's compliance.[3]

## II. THE ALJ'S DIVESTITURE ORDER CONSTITUTES A MATERIAL CHANGE IN FACT AND GOOD CAUSE FOR AN ORDER MODIFICATION

The ALJ's Initial Decision, relying on a full record of evidence, including more than 170 hours of live testimony, found that the Acquisition violated Section 7 of the Clayton Act and ordered ProMedica to divest St. Luke's. It was not a close call. The decision, which contains extensive factual findings of likely anticompetitive effects, and divestiture order indeed

---

[3] Moreover, certain of the "benefits" cited are speculative and others are not particularly impressive. The statement that St. Luke's "has begun or will begin working on several deferred capital projects" indicates that work on some of the claimed benefits has not started, let alone been realized – and, as argued before this Court, most of Defendant's claimed efficiencies are not merger-specific because there is no proof that St. Luke's could not and would not have realized them absent the Acquisition. The pay raises cited were 1% pay raises. Johnston, Tr. 5373. The noted benefit of "a one-time financial thank you" includes payments of $25. Johnston, Tr. 5373.

4

constitute a change in fact and good cause for modifying the Court's preliminary-injunction order. Nevertheless, contrary to Defendant's suggestion, Plaintiff is not required to prove, and the Court is not required to base its decision on, a heightened standard of "changed circumstances." *Movie Sys., Inc. v. MAD Minneapolis Audio Distrib.*, 717 F.2d 427, 430 (8th Cir. 1983) ("In modifying a preliminary injunction, a district court is not bound by a strict standard of changed circumstances but is authorized to make *any changes* in the injunction that are equitable in light of subsequent changes in the facts or the law, *or for any other good reason*.") (emphasis added; citations omitted). The ALJ's decision and order substantially increases the prospect that St. Luke's soon will be restored as an independent, vigorous competitor to ProMedica; accordingly, ProMedica has a greatly diminished incentive to maintain the viability, marketability, and competitiveness of St. Luke's and to comply strictly with its other HSA obligations. *See In re Chi. Bridge & Iron Co.*, 138 F.T.C. 1024, at *1162; 2005 FTC LEXIS 215 (Jan. 6, 2005) (Comm'n Dec.) (quoted in Introduction herein).

Defendant claims that an order modification is not needed because the Joinder Agreement requires ProMedica to maintain St. Luke's as a "viable" community hospital for 10 years and because the St. Luke's Board has a fiduciary duty to protect St. Luke's, thus it could seek relief against ProMedica for violations of the Joinder Agreement. These hollow arguments were already raised during the preliminary-injunction proceedings and were soundly rejected. The Joinder Agreement provision that Defendant cites is inadequate to ensure compliance because it does not protect several services from elimination and transfer from St. Luke's – which the HSA

5

does. Moreover, it is simply a figment of ProMedica's imagination that the St. Luke's Board would sue its parent.[4]

Defendant trivializes the Initial Decision – a 238-page opinion and order after a full merits trial – by calling it "not unimportant." Defendant's claim that the divestiture order does not "require" that a monitor be appointed, while technically true, is rather misleading. In practice, as Defendant's experienced antitrust counsel knows full well, the FTC routinely appoints a monitor whenever there is any lag between the issuance of an order and when divestiture may be completed. *See, e.g., In re DaVita Inc., Order To Hold Separate and Maintain Assets* § VIII.A (Oct. 25, 2011);[5] *In re Perrigo Co., Order to Maintain Assets* § IV.A-B (July 26, 2011);[6] *In re Cardinal Health, Inc., Decision and Order* § VII.A (July 21, 2011);[7] *In the Matter of Irving Oil Limited, Letter Appointing Monitor and Approving Monitor Agreement* (May 26, 2011);[8] *see also Statement of the Federal Trade Commission's Bureau of Competition on Negotiating Merger Remedies.*[9]

Defendant's assertion that it can be relied on to optimally maintain St. Luke's voluntarily due to economic incentives is specious. Specifically, ProMedica's assertion, that "it has every incentive to [sell St. Luke's] at the highest selling price" if the Commission affirms the divestiture order, rings hollow. In fact, ProMedica does not have an incentive to sell St. Luke's at the highest price, rather it has the incentive to sell St. Luke's at the highest *profit*. That is a meaningful difference because it can do so without necessarily maintaining the competitiveness

---

[4] The Joinder Agreement says nothing about maintaining St. Luke's as a "viable" community hospital, as Defendant argues; it simply says ProMedica shall maintain St. Luke's as a "fully operational" hospital, however subjective that term may be.
[5] Available at http://www.ftc.gov/os/caselist/1110103/110902davitaorder.pdf
[6] Available at http://www.ftc.gov/os/caselist/1110083/110726perrigoorder.pdf.
[7] Available at http://www.ftc.gov/os/caselist/0910136/111021cardinalhealthdo.pdf.
[8] Available at http://www.ftc.gov/os/caselist/1010021/110526irvingexxonletter.pdf.
[9] Available at www.ftc.gov/bc/bestpractices/bestpractices030401.shtm#The%20order%20to%20hold%20separate.

and viability of St. Luke's; it can do so by eliminating "costs" – including valuable services, employees, and equipment – at St. Luke's. Indeed, in the long term, it may be more profitable for ProMedica to weaken St. Luke's as a future competitor even if it means a lower sale price. And, again, this claim does not address the likelihood of voluntary compliance with respect to the full scope of Defendant's obligations under the HSA.

Defendant's attempt to explain away its own prior contradictory statements about its diminished incentives if an HSA order were entered is not credible and unavailing in any event. This court will recall that ProMedica stated that the entry of a hold-separate order would "severely reduce" its incentives and create a "strong disincentive" to make capital investments in St. Luke's. *Def's Opp'n to Pls.' Mot. for TRO or, In the Alternative, Mot. for Expedited Hr'g on Pls.' Mot. for a Prelim. Inj*. 4-5, 15 (filed Jan. 10, 2011); *Def.'s Post-Trial Br. in Opp'n to Pls.' Mot. for Prelim. Inj*. 19 (filed Feb. 22, 2011). Defendant now argues that those statements are taken out of context because they were made in opposition to Plaintiff's previously-proposed order, which included a monitor. But a review of those quotes shows that Defendant did not claim that the imposition of a monitor would reduce its incentive to invest in St. Luke's – they simply say that entry of a hold-separate order would do so. Because the Court ordered the HSA to continue in force, those statements are as relevant and significant today as they were then.[10] Thus, little or no comfort can be taken in Defendant's bald claim that it has "every" economic and legal incentive to abide by the HSA.

Finally, Defendant grossly overstates the extent to which appointment of a monitor may burden ProMedica with expenses and disruption. As ProMedica's acknowledges, a monitor

---

[10] The notion that the previously-proposed preliminary injunction would have prohibited ProMedica from making capital investments in St. Luke's was previously dispelled.

7

would only be in place pursuant to this Court's order for a short time, until approximately March 22, when the Commission issues its final decision. The millions of dollars in legal fees and consulting expenses that ProMedica has paid to pursue this case, first to a full trial, then through an appeal to the Commission, and that it apparently plans to spend to appeal to the Sixth Circuit,[11] undermine its claim that paying a monitor for approximately two months is a significant expense for ProMedica, which only recently had a billion dollars in reserves. Oostra, Trial Tr. 6126.

Claims about the disruption of a monitor are also overblown. Granting the monitor access to personnel, books and records, and preparation of compliance reports are standard requirements in FTC orders with monitor provisions.[12] As stated in Plaintiff's motion, the proposed order was specifically crafted to minimize the compliance burdens on ProMedica and is even more narrowly tailored than either the order originally proposed by Plaintiffs in this case or Judge Chappell's order. Moreover, if there has been no order violation and none going forward, as Defendant insists, then the monitor need not "burden" ProMedica for long.

The appointment of a monitor is not extraordinary by any means. Rather, it is atypical for an antitrust order to be in place for this duration (10 months) with no visibility into, or independent verification of, Defendant's compliance. We simply do not know whether ProMedica is complying with the HSA – no one does, at least outside of ProMedica. The appointment of a monitor is the only means to ensure that the Court's order has been complied with and to prevent potential violations. Plaintiff respectfully renews its request for entry of such an order.

---

[11] *See, e.g.*, www.modernhealthcare.com/article/20111227/NEWS/312279941/promedica-appeals-decision-on-divesting-hospital.

[12] At the very least there should be a compliance-reporting obligation imposed, requiring ProMedica to explain the manner of its compliance with the Court's order.

8

Dated: January 23, 2012

Respectfully submitted,

 /s/ Matthew J. Reilly

MATTHEW J. REILLY
JEFFREY H. PERRY
SARA Y. RAZI
ALEXIS J. GILMAN
Attorneys
Federal Trade Commission
Bureau of Competition
600 Pennsylvania Ave., N.W.
Washington D.C. 20580
Telephone: (202) 326-2350
Facsimile: (202) 326-2286
Email: mreilly@ftc.gov

RICHARD A. FEINSTEIN
Director
NORMAN A. ARMSTRONG, JR.
Deputy Director
Federal Trade Commission
Bureau of Competition

WILLARD K. TOM
General Counsel
Federal Trade Commission

*Attorneys for Plaintiff Federal Trade Commission*

9

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 23rd of January, 2012, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. mail. Parties may access this filing through the Court's system.

/s/ Alexis J. Gilman
Alexis J. Gilman
Attorney for Plaintiff Federal Trade Commission
Federal Trade Commission
Bureau of Competition
600 Pennsylvania Ave., NW
Washington, DC 20580
Telephone: (202) 326-2579
Facsimile: (202) 326-2286
agilman@ftc.gov